# General Services Administration Printing Operations

The Joint Committee on Printing lacks the authority to alter the General Services Administration's printing operations because the only basis for that authority is an invalid legislative veto provision contained in 44 U.S.C. § 501.

Section 207 of Public Law Number 102-392 requires executive branch entities (other than the Central Intelligence Agency, the Defense Intelligence Agency, and the National Security Agency) to procure printing related to the publication of government publications by or through the Government Printing Office.

September 13, 1993

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
GENERAL SERVICES ADMINISTRATION

This memorandum responds to your request for our opinion on certain restrictions that the Joint Committee on Printing ("JCP") has attempted to place on the printing operations of the General Services Administration ("GSA"). In particular, you have asked us whether the JCP has the authority to restrict GSA's printing functions, and whether recent legislation has any effect on GSA's authority to engage in printing. We conclude that the JCP does not have the authority to alter GSA's printing operations, but that section 207 of Public Law Number 102-392, 106 Stat. 1703, 1719 (1992) (codified as a note to 44 U.S.C. § 501) mandates procurement of printing for executive branch agencies by or through the Government Printing Office ("GPO").

I

Section 501 of title 44 provides that all executive, congressional, and judicial printing must be done at the GPO, except for printing in field plants operated by executive departments or independent offices "if approved by the Joint Committee on Printing." This Office issued an opinion in 1984 determining that the requirement of approval by the JCP constitutes an unconstitutional legislative veto, because it purports to empower a single committee of Congress to take legislative action without meeting the Constitution's requirements of bicameral passage and presentment to the President. Memorandum for William H. Taft, IV, Deputy Secretary of Defense, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Effect of INS v. Chadha on 44 U.S.C. § 501, "Public Printing and Documents"* (Mar. 2, 1984); *see INS v. Chadha*, 462 U.S. 919 (1983) (holding legislative veto unconstitutional for failure to comply with constitutional require-

ments of bicameralism and presentment). The opinion concluded that the provision allowing field printing is severable from the invalid approval mechanism and that the remainder of the statute, permitting field printing, remains effective.

Section 501 of title 44 is the only statute that purports to give the JCP direct authority over government field printing operations. Congress has not amended 44 U.S.C. § 501, nor has it passed any other legislation granting the JCP new authority over printing. Thus, the JCP lacks the authority to alter executive agencies' printing operations; its only asserted authority to do so is contained in an invalid approval mechanism.

The JCP has, on a number of occasions, asserted its authority to alter GSA's printing operations. In particular, it has stated that it "modified the charters of all GSA printing plants" by means of a letter sent to GSA on March 16, 1989. *See* Letter for Richard G. Austin, Administrator, General Services Administration, from the Honorable Charlie Rose, Chairman, and Senator Wendell H. Ford, Vice Chairman, Joint Committee on Printing, at 1 (Jan. 15, 1993). The March 16, 1989, letter apparently relied on the JCP's purported authority under 44 U.S.C. § 501 in stating, "please advise your [GSA's] field printing and duplicating organizations to restrict their activities to providing services to Federal agencies within their immediate building complexes." Letter for Richard G. Austin, Acting Administrator, General Services Administration, from Senator Wendell H. Ford, Acting Chairman, Joint Committee on Printing (Mar. 16, 1989). Because the JCP lacks the authority to restrict GSA's printing operations, its attempt in 1989 to alter GSA's field printing operations, as well as all other attempts by the JCP to modify unilaterally the printing operations of executive agencies, are invalid.

## II

Although Congress has not passed legislation granting the JCP direct authority over executive agencies' printing operations, it has passed legislation that requires executive branch agencies to procure printing through the GPO. Paragraph (a)(1) of section 207 of Public Law Number 102-392 provides as follows:

> None of the funds appropriated for any fiscal year may be obligated or expended by any entity of the executive branch for the procurement of any printing related to the production of Government publications (including printed forms), unless such procurement is by or through the Government Printing Office.

The scope of section 207(a)(1) is quite broad: it applies to any appropriated funds expended by any executive branch entity, which would encompass virtually all

spending by all executive branch agencies.[1]  *Cf.* 5 U.S.C. app. § 8E (Inspector General Act of 1978) (defining the term "Federal entity").  Thus, section 207(a)(1) mandates that all executive agencies procure all of their printing related to the production of government publications by or through the GPO.[2]

There are, however, three limitations on this provision.  Section 207(a)(2) exempts from the strictures outlined above:

> (A) individual printing orders costing not more than $1,000, if the work is not of a continuing or repetitive nature, and, as certified by the Public Printer, cannot be provided more economically through the Government Printing Office, (B) printing for the Central Intelligence Agency, the Defense Intelligence Agency, or the National Security Agency, [and] (C) printing from other sources that is specifically authorized by law.

The first two exemptions place clear, but narrow, limits on the scope of section 207.  Only the third exemption could potentially exempt GSA entirely from the restrictions of section 207(a)(1).  The sole remaining question, then, is whether GSA may be exempted pursuant to section 207(a)(2)(C), which exempts "printing from other sources that is specifically authorized by law."

## III

You have identified two possible statutory bases for the proposition that GSA's printing operations are specifically authorized by law.  The first is 40 U.S.C. § 481(a)(3), which authorizes the Administrator of GSA to "procure and supply personal property and nonpersonal services for the use of executive agencies in the proper discharge of their responsibilities."  The second is 40 U.S.C. § 293, which provides in relevant part that, "[f]or the establishment of a working capital fund there is appropriated $50,000, without fiscal year limitation, for the payment of salaries and other expenses necessary to the operation of a central blue-printing, photostating, and duplicating service."

---

[1] Previous versions of the note to 44 U S C  § 501 (where section 207 is codified) contain similar restrictions on printing procured by entities of the executive branch  *See, e.g.*, 44 U.S.C § 501 note (Supp. II 1990) (Legislative Branch Appropriations Act, 1991, Pub. L No. 101-520, § 206, 104 Stat. 2254, 2274 (1990))  These prior versions had a significantly narrower scope, however, as they applied only to the procurement of printing "from commercial sources." *See id*

[2] Section 207 does not violate the separation of powers by delegating executive authority to the GPO  *See Applicability of Post-Employment Restrictions on Dealing with Government to Former Employees of the Government Printing Office*, 9 Op. O L.C 55 (1985) (concluding that the GPO is a unit of the legislative branch for purposes of post-employment restrictions)  It does not give the GPO the authority to refuse to print any materials, but rather merely requires that printing be procured "by or through" the GPO.  Moreover, because 44 U S.C. § 1101 provides that "[t]he Public Printer shall execute such printing and binding for the President as he may order and make requisition for," the executive branch retains its ability to ensure that materials are printed

Section 481(a)(3) of title 40 does not constitute specific authorization to print. The provision does not mention printing or any printing-related services. This omission is particularly striking in light of the reference in a companion provision, § 481(a)(1), to other aspects of "procurement and supply of personal property and nonpersonal services," such as "contracting, inspection, [and] storage." The specific reference in § 481 to such functions can be contrasted with the omission of any reference to printing. Moreover, there are no references to printing in the legislative history of 40 U.S.C. § 481. Thus printing is authorized by this provision only as one of the many services that GSA provides. Such broad authorization to engage in certain categories of services is, by definition, general. There is no basis for suggesting, therefore, that this provision satisfies the requirement that the printing be "specifically authorized by law."

Section 293 is a somewhat closer case, because it does mention "blue-printing, photostating, and duplicating," which could be construed to include most, and perhaps all, of GSA's printing operations. The problem with this section is that, although it specifically mentions these printing operations, it does not specifically authorize them.

Section 293 was originally enacted as a section of an appropriations act that was passed in 1945, Independent Offices Appropriation Act, 1946, Pub. L. No. 79-49, § 101, 59 Stat. 106, 115 (1945), and has not been substantively amended since then. This section of the appropriations act authorized the creation and maintenance of a fund to pay salaries and other expenses; that is, it merely appropriated funds. The operative effect of the current version, similarly, is to authorize the use of certain money to fund ongoing operations. The structure of § 293 is that it appropriates $50,000 for the payment of salaries and expenses necessary to the operation of printing services. The phrase "necessary to the operation of a central blue-printing, photostating, and duplicating service" indicates that the printing service — and any authorization for it — exists irrespective of the appropriation in § 293. The reference to printing merely clarifies the purposes for which the funds shall be used. Thus, § 293 clearly contemplates that GSA[3] will operate "a central blue-printing, photostating, and duplicating service," but it does not, by its terms, authorize such a service. The language of the section reveals that its operative effect is to authorize the use of funds to pay for certain functions, not to authorize those functions *per se.*

Arguably, the establishment of a fund to pay for printing also constitutes an implied authorization to print. Such implicit authorization, however, does not appear to meet the requirement that the printing be "specifically authorized by law." "Specifically" is defined as "[w]ith exactness and precision; in a definite manner," Webster's New International Dictionary 2415 (unabridged 2d ed. 1957), and

---

[3] The original version of 40 U S C § 293 appropriated funds for blue-printing, photostating and duplicating by the Federal Works Agency Section 103 of the Federal Property and Administrative Services Act of 1949, Pub. L No 81-152, 63 Stat 377, 380, transferred all functions of the Federal Works Agency to GSA

"specific" means "[e]xplicitly set forth; definite." American Heritage Dictionary 1730 (3d ed. 1992). In this case, the authorization to print is not explicitly set forth or presented in a definite manner. At most, it is indirectly entailed in the explicit authorization to appropriate funds. The absence of an express authorization to print defeats any argument that GSA's printing operations were "specifically authorized by law." Thus, in 40 U.S.C. § 293 there is a specific reference to printing, and there may be an implied authorization to print, but there is no specific authorization to print.

The legislative history of 40 U.S.C. § 293 does not affect this analysis of its language, because such history reveals nothing with respect to Congress's intent (or lack thereof) specifically to authorize printing. We are left, then, with the words of the statute. The most natural reading of them is that they specifically authorize the creation of a fund to pay certain expenses, and that they may contain an implied authorization of the printing that helps to create those expenses, but that they do not specifically authorize printing, because the implication of authorization does not rise to the level of specificity that section 207 requires.

## IV

We conclude that the JCP lacks the authority to alter GSA's printing operations, because the only basis for that authority is an invalid legislative veto contained in 44 U.S.C. § 501. We also conclude that section 207 requires executive branch entities (other than the Central Intelligence Agency, the Defense Intelligence Agency, and the National Security Agency) to procure printing related to the publication of government publications by or through the GPO. GSA is exempted from this requirement only with respect to certain individual printing orders costing $1,000 or less.

WALTER DELLINGER
*Acting Assistant Attorney General*
*Office of Legal Counsel*